# Shubert, Appellant, *v.* The Public Service Commission et al.

*Public Service Company Law — Public Service Commission — Electric light companies—Regulations—Administrative questions —Extension of services—Financing—War time emergencies.*

When an electric company is asked to extend its lines to serve a particular customer it is proper to take into consideration the amount of the expenditure involved and the revenue reasonably to be expected in return. It is entirely proper, in such case, that an agreement be entered into providing that the proposed customer shall furnish assistance in the investment according to suitable rules filed with the Public Service Commission.

The reasonableness of regulations requiring a customer of an electric lighting company to finance or assist in financing an extension of the company's electric service to a theatre building, during the emergency period of the late war, was an administrative question and the ruling of the Public Service Commission thereon will be affirmed, in the absence of evidence that it was illegal or unreasonable.

It was neither illegal nor unreasonable to require the owner of a theatre to pay one-third of the cost of an extension to his building, and to loan the electric company the balance as a condition precedent to the extension of the service during the war, when the company was bending all its energy to the assistance of essential industries under the direction of the federal government, and had no capital for other uses.

Argued November 12, 1920.   Appeal, No. 112, Oct. T., 1920, by complainant, from order and determination of the Public Service Commission, Complaint Docket No. 2745, 1919, in the case of J. J. Shubert v. The Public Service Commission of the Commonwealth of Pennsylvania and the Philadelphia Electric Company, intervener. Before ORLADY, P. J., PORTER, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint against the Philadelphia Electric Company and petition for an order of reparation.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission made an order which set forth that it "being unable to find that the charges made for which reparation is claimed were in violation of any order of the commission or were unjust, unreasonable, or unjustly discriminatory, or unduly or unreasonably preferential, or in excess of the rates contained in tariffs or statements," refused reparation and dismissed the petition.   Complainant appealed.

*Error assigned* was the order of the commission.

*Ralph B. Evans,* of *Prichard, Saul, Bayard & Evans,* for appellant.—A public utility company whose facilities are inadequate cannot finance the cost of necessary additional equipment at the expense of a single consumer: Panther Valley Water Co. v. Public Service Commission, 70 Pa. Superior Ct. 8; City of Montgomery v. McDade, 180 Ala. 156; Pocatello Water Co., Ltd., v. Slandley, 7 Idaho 155; Pine Bluff Corp. v. Toney, 96 Ark. 345.

*Ralph J. Baker,* of *Hause & Baker,* and with him *Arthur B. Huey,* for intervener.—The question presented to the Public Service Commission was an administrative one: People ex rel. N. Y., etc., Gas Co. v. McCall, 219 N. Y. 84; 38 U. S. Supr. Ct. Rep. 122. The court will not reverse the action of the commission on an administrative question unless it is outside the power delegated, or wholly arbitrary or fundamentally unjust or unreasonable: Mt. Union Borough v. Mt. Union Water Co., 63 Pa. Superior Ct. 337; I. C. C. v. Ill. Cent. R. Co., 215 U. S. 452.

The action of the commission is supported by principle and authority: Fleming v. Home Heating Co., 5 Department Reports 2208; Tualatin Valley Electric Co. (Cal.) P. U. R., 1918 A, 592; Rosmagno v. Bronx Gas & Elec. Co., P. U. R., 1919 F, 159; Board of

Education v. Tintern Manor Water Co., P. U. R., 1918
A, 642; in re Springfield Gas & Elec. Co., P. U. R., 1918
E, 171; Ulrich v. East Penna. L., H. & P. Co., P. U. R.,
1917 D, 453.

OPINION BY PORTER, J., July 14, 1921:

The appellant, on June 29, 1918, applied to the Phila-
delphia Electric Co. for the service of electric light and
power to a, new theatre, which was then in course of
erection.  He was informed that owing to the require-
ments of the government of the United States and the
essential war industries, which under the orders of the
Priorities Board were entitled to a preference in service,
the service which he desired could not be furnished by
the existing lines of the company.  He was further in-
formed that in order to give the service to the theatre it
would be necessary to lay a special cable from the sub-
station of the company, at Ludlow and 21st streets, to
the theatre, at Manning and Broad streets, and that,
owing to war conditions, the electric company could not
obtain the capital to finance the extension.  The appel-
lant, after some negotiations, agreed to pay to the elec-
tric company the amount of the estimated cost of the ex-
tension of the company's lines, one-third of that cost to
be borne by the appellant, as war wastage, because of
the prohibitive prices then prevailing for materials and
labor, and the parties entered into a contract, contain-
ing the following covenants material to the question here
involved: "Rider No. 13.  Notwithstanding anything to
the contrary contained in the attached contract, it is
agreed as follows; in consideration of the special ex-
tension and service connection charges made necessary
for the purpose of this contract, the customer agrees to
pay to the company, at the time of signing contract for
electricity the sum of $5,498.23, covering one-third the
cost thereof, without any refund whatsoever, and the bal-
ance of the cost of the special extension and service con-
nection, $10,996.47, is to be paid by the customer to the

company, at the time of signing contract for electricity, and the company agrees to pay the customer annually an amount equal to twenty per cent of the aggregate net bills per annum of the said customer and of any other customer connected to said extension, provided that the total of said payments by the company are not to exceed the sum of $10,996.47, and provided further that at the expiration of ten years, payments will cease, regardless of whether the aforesaid amount has been paid or not." The appellant paid to the electric company the said sum of $16,494.70 and the electric company constructed the lines necessary to make the connection, the cost thereof considerably exceeding the amount of the estimate, as is clearly established by the evidence.   The electric company furnished current to the theatre, as by the contract required.   The "Rider No. 13" above quoted was, at the time the contract was made, one of the regulations of the company which had been filed with the Public Service Commission, as a part of its tariff of rates.   Nine months after the appellant had paid the above mentioned sum to the electric company, and long after the work had been done and the service installed, he filed this complaint with the Public Service Commission, averring that the requirement of the company that he advance the cost of the extension of the service, upon the terms in the contract stated, and "That the rate attempted to be fixed by the respondent in said tariff and the charge made by the respondent to complainant as above set forth, are unjust, unreasonable and contrary to law."   He prayed the Public Service Commission to award reparation of the entire sum of $16,494.70.   The electric company filed an answer setting forth that at the time of the transaction it was fully understood and agreed by the complainant and the respondent that, in the circumstances then existing, one-third of the cost of the construction of the extension should be paid by the complainant without any right of refund whatever, as the fair proportion of the total estimated cost of the

special extension, due to the excess cost of labor and materials necessary therefor by reason of war conditions and that the other two-thirds of the amount, specified in the contract, should be refunded by the company in the manner in the contract stated; that the agreement was in accordance with its tariffs duly published, filed and in effect, and is just and reasonable. The answer further averred that the available capacity of the company was, at that time, subject to disposition only in accordance with rules and regulations promulgated by the authorized representatives of the government of the United States, and that it could scarcely meet the requirements of existing customers and the growing demands of the United States and manufacturers of essential war materials dependent upon the service of the respondent. The commission, after a hearing at which considerable testimony was taken, and full investigation of the matter, found that the charges made by the electric company, for which reparation is claimed, were not in violation of any order of the commission, or unjust, unreasonable, or unjustly discriminatory or unduly preferential, or in excess of the rates contained in the tariffs filed, and made an order refusing reparation and dismissing the complaint. The complainant appeals from that order.

The order of the commission is prima facie evidence of the reasonableness thereof, and the burden of proving the contrary is upon the appellant. This contract was made in accordance with the provisions of the schedule of tariffs then on file with the Public Service Commission, it was an effective tariff, and we find nothing in the Public Service Company Law which forbids such a regulation by an electric company. We cannot, therefore, say that the order of the commission is not in conformity with law; whether it is reasonable is a matter to be determined from the conditions existing at the time the regulation was enforced. The evidence clearly established that the electric company was then subject to the control of a federal allocator, who in turn was subject to

the Priorities Board, the general orders of which varied from time to time, everything and everybody was bending every energy to winning the war, and all the facilities of this respondent were subject to the absolute control of the government of the United States. Theatres were not among the institutions entitled to priority of service, they were postponed, in order to insure adequate service to the industries essential to the winning of the war. The requirements of the Navy Department, the United States Shipping Board, and the manufacturers of ordnance and other war materials were at that time making unusual demands upon the services of the respondent. An emergency existed, to meet which the capacity of this respondent was taxed to an extent which reasonable foresight could not have anticipated. These demands were abnormal, but, so long as the emergency existed, they were paramount. This was the condition when the complainant wished to obtain current for his theatre. The company could not furnish the current from its then existing lines without impairing the service to industries which the federal authorities classified as entitled to a preference. The appellant could only be served by an extension of the company's lines involving a cost estimated at $16,494.70 The electric company, in order to issue securities to finance extensions had to obtain the approval of the Capital Issues Committee at Washington, and the Capital Issues Committee of the Local Federal Reserve Board, and they had obtained the approval of those committees of the issue of securities to a large amount, but with the understanding, imposing a moral obligation on the officers of the company, that the money thus obtained was to be used only "for housing and for war purposes, and for other matters which were able to gain priority." The company could not, at that time, finance an extension to furnish current to a theatre. When this complainant was confronted by this condition of affairs, he might have gone to the Public Service Commission with a complaint challenging the va-

lidity of "Rider No. 13" and praying the commission to make an order directing the electric company to finance the extension of the lines, but it can hardly be supposed that the commission would, under the conditions then existing, have attempted to require the company to use the funds in its hands in a manner violating an understanding between the company and the federal authorities. It was no doubt for this reason that the appellant did not go to the Public Service Commission but paid his money, as by the regulation required. To hold that the commission should now make the order of restitution, would be, in effect, to say that they ought to have made the order at that time, notwithstanding the conditions then existing.

When an electric company is asked to extend its lines to serve a particular customer, it is proper to take into consideration the amount of the expenditure involved in the extension and the revenue reasonably to be expected to result from such extension. When the investment is out of all proportion to any increase of revenue likely to result, it is manifest that the extension will naturally result in an increase of the rates of other customers, for the company is entitled to a reasonable return upon the investment if that investment is such as under the law it was required to make. In such a case it is entirely proper that an agreement be entered into providing that the proposed customer shall furnish such assistance in the investment as may be deemed necessary to provide sufficient justification for making the expenditure, the agreement with the customers being made according to suitable rules filed with the Public Service Commission. The reasonableness of such regulations, in such circumstances as resulted from the recent war, has been recognized by the Public Service Commission of many of the states: In re Standards for Gas and Electric Service, 1st Ill. P. U. C. Rep. 1192; In re Green Bay Water Co., 12 Wis. R. C. Rep. 734; Tualatin Valley Electric Co. (Cal. R. R. Com.), P. U. R. 1918 A 592. The New Jersey

Commission, in a case involving the reasonableness of the division of the cost of extensions of a public utility said: "With the knowledge that prices of iron, steel, lead and labor have so materially advanced, and the well known policy of the government departments to discourage any improvement unless absolutely necessary, it was expected that some mutual coöperation would be suggested": Board of Education v. Tintern Manor Water Co., P. U. R. 1918 A 642. The Arizona Commission authorized a rule providing that extensions for gas and electric service should during the war be at the expense of the consumer, and that the company should purchase the service from the consumer when the financial situation would permit and pay to the consumer therefor the normal 1915 cost: In re Pacific Gas & Electric Co., P. U. R. 1919 A 597. The reasonableness of a regulation requiring a consumer to finance, or assist in financing, an extension of electric service for his peculiar benefit must to a large extent depend upon the conditions existing at the time the expenditure is made. The question, under the facts presented in the present case, was an administrative one, and we cannot say that the order of the commission is not in conformity with law, nor that it is unreasonable.

The order of the commission is affirmed and the appeal dismissed at cost of the appellant.